IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GLOBAL PAYMENTS DIRECT, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No: 1:14-CV-02634-LMM ) |
| INTELLIGENT PAYMENTS, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) ) |
| _____ | ) ) |
| INTELLIGENT PAYMENTS, LLC, | ) ) ) |
| Defendant, Third-party plaintiff | ) ) |
| v. | ) ) ) |
| RYAN HULT, TOP SHELF MARKETING, INC., et al., | ) ) ) |
| Third-party defendants. | ) |

**THIRD-PARTY DEFENDANT RYAN HULT'S SPECIAL APPEARANCE**

**AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

COMES NOW Third-Party Defendant Ryan Hult and, by special appearance through his undersigned counsel, files this motion to dismiss for lack of personal jurisdiction.

## I.     INTRODUCTION

This case began as a breach of contract action by Global Payments Direct, Inc. ("Global") for the alleged breach of a Merchant Services Agreement ("Agreement") entered into between Plaintiff and defendant Intelligent Payments, LLC ("Intelligent") in which Intelligent marketed Global's credit and debit card payment processing services. Intelligent consented to jurisdiction in Georgia.

The essence of the Complaint is that Intelligent breached the Agreement by boarding bad merchants. The bad merchants caused an excessive number of credit and debit card chargebacks, and Plaintiff is seeking to recover $1.9 million plus costs and attorney's fees.  Intelligent in turn filed a third-party complaint against numerous corporate defendants as well as individuals alleging that the debts owed to Global are due in part to acts or omissions of Third-Party Defendants. Intelligent contends that the Third-Party Defendants are subject to this jurisdiction of this Court because they executed merchant agreements with Global in which they consented to jurisdiction in Georgia.

The issue here is that the Court does not have personal jurisdiction over Third-Party Defendant Ryan Hult.  He did not sign the merchant agreement, which

contains the consent to jurisdiction, and he does not have sufficient contacts with Georgia for the Court to exercise personal jurisdiction over him.

## II.  STATEMENT OF FACTS

Mr. Hult is a resident of New Jersey. (Third-Party Complaint, ¶ 14). He does not reside in Georgia, own property in Georgia, pay taxes in Georgia, or have bank accounts in Georgia. (Declaration of Ryan Hult (hereinafter "Hult Decl.") attached hereto as Exhibit A, ¶¶ 3-5). Further, the company that Intelligent connects to Mr. Hult, Top Shelf Marketing, Inc. ("Top Shelf") is a New Jersey Corporation with its principal place of business in New Jersey. (Third-Party Complaint, ¶ 14).

The only contact that Mr. Hult has in his individual capacity to this case is that he allegedly signed a personal guarantee for Top Shelf's agreement with Global. (Third-Party Complaint, ¶ 14). Mr. Hult does not recall signing any personal guarantee and denies Intelligent's allegations that he did so. (Hult Decl., ¶ 6). However, by Intelligent's own allegations, Mr. Hult did not sign a merchant agreement with Global. (*See* Third-Party Complaint, ¶¶ 14, 17). Intelligent alleges that Top Shelf signed the merchant agreement, and Mr. Hult signed a personal guarantee. (Id., ¶ 14). The merchant agreement is the critical document that would this Court jurisdiction over the corporate Third-Party Defendants. (Id., ¶ 17). Neither the merchant agreement nor the personal guarantee are attached to the

3

Third-Party Complaint. The Third-Party Complaint does not allege any connection between Top Shelf and Mr. Hult other than the fact that he signed a guarantee. (Third-Party Complaint, ¶¶ 14, 17).

Top Shelf did not seek out Global for its payment processing needs. Instead, Intelligent sought out Top Shelf. (Id., ¶¶ 19, 21). Any merchant services agreement between Top Shelf and Global would have been executed in New Jersey. (Hult Decl., ¶ 7). Neither Mr. Hult nor Top Shelf negotiated any terms of any agreement with Global. Instead, Top Shelf would have merely executed the merchant services agreement presented to it by Intelligent. (*Id.*).

Mr. Hult does not maintain any offices or facilities in Georgia, and does not recruit from or advertise in Georgia for business. He derive no benefits or protections from Georgia, either by soliciting business or selling or distributing products or services here, and receives no direct economic benefit from the residents of Georgia. (Hult Decl. ¶ 3.)

Mr. Hult does not own any personal or real property, bank accounts or brokerage accounts in the State of Georgia. (Hult Decl., ¶ 4). He has never established residency, mailing addresses or telephone numbers in the State of Georgia. (Hult Decl., ¶ 5.)

Quite simply, Mr. Hult's contacts with Georgia are simply insufficiently systematic or substantial to justify the exercise of general jurisdiction.

### III. ARGUMENT AND CITATION TO AUTHORITY

The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a nonresident defendant with whom it has minimum contacts such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Eleventh Circuit applies a two-step test in determining whether a district court may exercise personal jurisdiction over a non-resident defendant. First, the court must determine whether the forum state's long-arm statute provides a basis for personal jurisdiction. *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). Second, the court must determine whether the defendant maintains sufficient contacts with the forum state such that exercise of personal jurisdiction over the defendant is consistent with notions of fair play and substantial justice under the Fourteenth Amendment's Due Process Clause. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945). Sufficient minimum contacts are those which give the defendant "fair warning" that a particular activity may subject him to the personal jurisdiction of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The contacts must rise to a level such that the defendant "should reasonably

anticipate being haled into court" in the forum state. *Burger King*, 471 U.S. at 474. In determining whether minimum contacts exist, courts consider "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Where a defendant properly moves to quash out-of-state service of process for lack of jurisdiction, the burden of proof is on plaintiff to establish the facts of jurisdiction by a preponderance of evidence. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

### A.     GEORGIA'S LONG-ARM STATUTE

Georgia's long-arm statute provides that Georgia courts may exercise personal jurisdiction over a nonresident defendant if, among other things, the nonresident "(1) Transacts any business within this state; (2) Commits a tortious act or omission within [Georgia]; (3) Commits a tortious injury in [Georgia] caused by an act or omission outside [Georgia] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]; (4) Owns, uses, or possesses any real property situated within this state." O.C.G.A. § 9-10-91. Courts interpret and apply Georgia's long-arm statute

"in the same way as would the Georgia Supreme Court." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1258.

Georgia's long-arm statute "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (Ga. 1987). In determining whether a nonresident defendant may be subject to personal jurisdiction under subsection (3), Georgia courts consider many factors including -- but not limited to -- whether a defendant (1) regularly does business or solicits business within Georgia; (2) engages in a persistent course of conduct within Georgia; (3) derives substantial revenue from services rendered within Georgia; (4) has employees located within Georgia; or (5) is authorized to do business in Georgia. *Id.* at 129 (no personal jurisdiction existed over nonresident defendant who advertised in a trade paper, negotiated a sale over the phone, and accepted a deposit check from a Georgia resident); *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 715-16 (Ga. Ct. App. 1999) (no personal jurisdiction existed over nonresident defendant who visited Georgia once and negotiated a contract via telephone, mail, and fax).

Plaintiff has not and cannot meet this burden.

## B. THE SIGNING OF A PERSONAL GUARANTEE DOES NOT CONFER JURISDICTION.

Under Georgia's long-arm statutes, the signing of personal guarantees does

7

not meet the requirement of sufficient contacts. *Apparel Res. Int'l v. Amersig Southeast*, 215 Ga. App. 483 (1994). Even with a choice of law provision providing for jurisdiction in Georgia, Georgia law holds that the execution of a personal guarantee "'standing alone would be insufficient to confer jurisdiction.. . .'" *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 894 (1989) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (105 S. Ct. 2174, 85 L. Ed. 2d. 528) (1985)).

In *Apparel Res. Int'l*, the Court held that a personal guarantee with a choice of law provision applying Georgia law, together with other contacts with this state did not establish a basis for the trial court's long arm jurisdiction under O.C.G.A. § 9-10-91. Apparel Res. Int'l, 215 Ga. App. at 486. The Court explained: O.C.G.A. § 9-10-91 (1) provides that courts of this state may exercise personal jurisdiction over any nonresident if that nonresident "transacts any business within this state." "This has been interpreted to mean that purposeful acts must have been performed by the defendant to tie it to the State, and mere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the Long Arm statute. The United States Supreme Court has held that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum, and that the contract is ordinarily but an intermediate

8

step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." (Citations and punctuation omitted.) *Mayacamas Corp.*, 190 Ga. App. at 893.

Here, the facts contain even fewer contacts with Georgia – merely the execution of a personal guarantee, which Intelligent has not produced and Mr. Hult contends does not exist.

Georgia courts have considered personal guarantees and found personal jurisdiction to exist.  However, in all of those cases, there were other significant contacts with Georgia, such as buying, improving, or leasing real property in Georgia.  *See Noorani v. Sugarloaf Mills Ltd. Partnership of Ga.*, 308 Ga. App. 800 (2011); *Paxton v. Citizens Bank and Trust of West Ga.*, 307 Ga. App 112 (2010); *Robertson v. CRI, Inc.*, 267 Ga. App. 757 (2004).  None of those facts exist here, and Mr. Hult's personal contacts with Georgia are non-existent.

Here, Mr. Hult did not travel to Georgia for any reason.  He did not negotiate with Global over the merchant services agreement.  He did not seek out Global.  Instead, Intelligent approached Top Shelf in an attempt to sell Global's

9

services.  Mr. Hult simply has no contacts with the state of Georgia.

### C. GENERAL JURISDICTION DOES NOT EXIST.

There are two types of jurisdiction this Court may consider: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984); *FrancoSteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994). This Court's exercise of general jurisdiction satisfies due process where the defendant's contacts with the forum state are "continuous and systematic." *Consolidated Dev. Corp. V. Sherritt*, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000).

Mr. Hult is a resident of New Jersey. (Third-Party Complaint., ¶ 14; Hult Decl., ¶ 2). He has never personally conducted any business in the State of Georgia and does not, and is not required to, pay taxes to the State of Georgia. He does not maintain any offices or facilities in Georgia, and does not recruit from or advertise in Georgia for business. He derives no benefits or protections from Georgia, either by soliciting business or selling or distributing products here, and he receives no direct economic benefit from the residents of Georgia. (Hult Decl., ¶ 3.

Mr. Hult does not own any personal or real property, bank accounts or brokerage accounts in the State of Georgia. (Hult Decl., ¶ 4.) He has never established residency, a mailing address or a telephone number in the State of Georgia. (Hult Decl., ¶ 5.)

Mr. Hult's contacts with Georgia are simply insufficiently systematic or substantial to justify the exercise of general jurisdiction, and Mr. Hult's motion should be granted.

### D. SPECIFIC JURISDICTION DOES NOT EXIST.

If contacts are not sufficient to establish general jurisdiction, such as the present matter, the forum state may still assert specific personal jurisdiction. The Eleventh Circuit has held that the exercise of specific jurisdiction passes constitutional muster where three criteria are satisfied. First, the defendant's contacts with the forum state must be related to the cause of action or give rise to it. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). Second, the contacts must involve some act of the defendant by which he purposefully avails himself of the benefits of conducting activities of the forum. *Id.* Third, the defendant's activities must be such that he could reasonably anticipate being haled into court in the forum state such that the exercise of personal jurisdiction does not offend notions of fair play and substantial justice. *Id.*

The United States Supreme Court has explained that the specific jurisdiction requirements prevent a defendant from being haled into court based on " 'random,' 'fortuitous,' or 'attenuated' contacts" or based on the " 'unilateral activity of another party or a third person,' [citation]." *Burger King Corp.*, 471 U.S. at 475. Rather, there must be some act by which the defendant creates a

11

"substantial connection" with the forum state "such that he should reasonably anticipate being haled into court there." *Id*. at pp. 474-475.

Because the facts in this case do not meet any of the three requirements, Mr. Hult should not be required to defend a lawsuit in Georgia.

### 1.     Mr. Hult has not purposefully availed himself of the benefits of doing business in Georgia.

This is the most critical of the three criteria. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a nonresident defendant's conduct and connection with the forum state are such that he should anticipate being haled into court there. *Burger King*, 471 U.S. at 474. The quality and nature of the defendant's contacts are critical. *Hanson*, 357 U.S. at 253. This prong is only satisfied when a defendant has deliberately engaged in significant actions within the forum state, or created continuing obligations to forum residents. *Burger King*, 471 U.S. at 475.

Under the facts of this case, it is clear that Mr. Hult did not purposefully avail themselves of the benefits and protections of Georgia law. The only fact alleged connecting Mr. Hult in any way to Georgia is that he executed a personal guarantee for the merchant services agreement. (*See* Third-Party Complaint, ¶ 14). This fact is disputes as Mr. Hult contends that he did not sign such a guarantee.  (Hult Decl., ¶ 6).  However, even if he did, it is insufficient to confer

12

jurisdiction.

Additionally, Mr. Hult did not seek out Global or do any business with Global. Intelligent, a Nevada company with its principal place of business in Texas, approached Top Shelf. "The mere 'unilateral activity of those who claim *some relationship* with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (emphasis added).

Moreover, Mr. Hult has not purposefully availed himself of the benefits and protections of Georgia law. He does not have any contacts of any type with Georgia, relating to this law suit or otherwise. Subjecting Mr. Hult to this Court's personal jurisdiction would contravene principles of due process.

The first part of the specific jurisdiction test, therefore, fails.

2. **The controversy does not arise out of Mr. Hult's contacts with Georgia.**

Mr. Hult did not enter into any contract with Global for Global's merchant services. Intelligent alleges that he signed a personal guarantee, a fact that Mr. Hult disputes. Even if he did, there is no nexus, let alone a substantial nexus, between Mr. Hult's alleged forum activities and claims for breach of contract under the merchant services agreement. None of the acts giving rise to

13

Intelligent's claims concern Mr. Hult's contact with Georgia. Even with the flexibility of the specific jurisdiction test, the facts do not support finding a ***direct*** nexus between the Mr. Hult's contacts with Georgia and Intelligent's claims and, therefore, personal jurisdiction cannot stand. *See Kulko v. Georgia Superior Ct.*, 436 U.S. 84, 92 (1978) (when cause of action is unrelated to nonresident's slight activity within the forum, constitutionality of jurisdiction is very unlikely).

This part of the test also fails.

### 3.      It is unreasonable to assert personal jurisdiction over Mr. Hult.

Exercise of jurisdiction Mr. Hult is unreasonable. The reasonableness prong examines the factors of "fair play and substantial justice." Relevant factors include (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the inter-state judicial system's interest in obtaining the most efficient resolution of controversy; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987). Based on the consideration of these factors, it is unreasonable for Georgia to exercise personal jurisdiction over Mr. Hult. To begin with, the burden on Mr. Hult is not trivial considering his lack of presence in Georgia.  He lives in New

Jersey and has no contacts with Georgia. Second, while Georgia has an interest in protecting its citizens, that protection can be satisfied with seeking relief against Top Shelf, the alleged actual party to the merchant services agreement.

Likewise, there is no specific inter-state judicial system's interest in resolving the claims against Mr. Hult in Georgia—especially since the court is not faced with a situation in which Intelligent has no other forum. Finally, courts will look at the shared interests of the several states in furthering social policies. This factor is not triggered in this case at all.

Based on these considerations, exercise of personal jurisdiction over Mr. Hult would be patently unreasonable and would tremendously contravene the notion of "fair play and substantial justice."

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the motion and dismiss Mr. Hult on the basis of lack of personal jurisdiction.

Respectfully submitted this 2nd day of December, 2014,

    /s/ Andrew M. Beal
Andrew M. Beal
Georgia Bar No. 043842
Nicholas Smith
Georgia Bar No. 142303

                        **BEAL LAW GROUP**
                        1230 Peachtree Street, Suite 3750
                        Atlanta, Georgia 30309
                        (404) 688-2700
                        (404) 688-2988 (fax)

                        Glenn M. Lyon
                        Georgia Bar No. 462369
                        **McGregor Lyon, LLC**
                        1230 Peachtree Street, Suite 3750
                        Atlanta, Georgia 30309
                        (404) 688-5964

                        *Attorneys for Third-Party*
                        *Defendant Ryan Hult*

## **CERTIFICATE OF FONT COMPLIANCE**

I hereby certify, as required by Local Rule 7.1D, N.D. Ga., that this pleading has been prepared in Time New Roman 14-point font or other such font as approved by Local Rule 5.1B, N.D. Ga.

                                            /s/ Andrew M. Beal
                                        Andrew M. Beal
                                        Georgia Bar No. 043842

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and accurate copy of the within and foregoing *THIRD-PARTY DEFENDANT RYAN HULT'S SPECIAL APPEARANCE AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION* upon all parties by filing same with the Court's CM/ECF system, which will deliver electronic notice to the following:

| | |
|---|---|
| Nathan D. Chapman, Esq.<br>Anthony E. Giardino, Esq.<br>Wargo & French LLP<br>999 Peachtree Street, NE<br>26th Floor<br>Atlanta, Georgia 30309 | Theodore F. Monroe, Esq.<br>Law Offices of Theodore F. Monroe<br>800 W. Sixth Street<br>5th Floor<br>Los Angeles, CA 90017 |
| Scott L. Bonder, Esq.<br>Fried & Bonder LLC<br>White Provisions Buildings<br>Suite 305<br>1170 Howell Mill Road, NW<br>Atlanta, GA 30318 | |

This 2nd day of December, 2014.

/s/ Andrew M. Beal
Andrew M. Beal
Georgia Bar No. 043842